1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   VIVIAN WALL, on behalf of minor J.W.,        )   Case No.: 1:16-cv-0752 - JLT
                                                   )
12              Plaintiff,                         )   ORDER REMANDING THE ACTION PURSUANT
                                                   )   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13        v.                                       )
                                                   )   ORDER DIRECTING ENTRY OF JUDGMENT IN
14   NANCY A. BERRYHILL[1],                        )   FAVOR OF PLAINTIFF VIVIAN WALL AND
     Acting Commissioner of Social Security,       )   AGAINST DEFENDANT NANCY A. BERRYHILL
15                                                 )   ACTING COMMISSIONER OF SOCIAL
                Defendant.                         )   SECURITY
16                                                 )
                                                   )
17   _____          )

18          Vivian Wall, guardian ad litem for J.W., asserts J.W. is entitled to benefits under the Social

19   Security Act.  Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the record and

20   seeks judicial review of the ALJ's administrative decision.  Because the ALJ failed to address a conflict

21   in the medical record and erred in rejecting limitations identified by a physician, the matter is

22   **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

23                          **PROCEDURAL HISTORY**

24          In September 2009, an application for benefits was filed on behalf of J.W., alleging disability

25   beginning June 15, 2006.  (Doc. 12-7 at 2)  The Social Security Administration determined J.W. was

26   not disabled and denied the application on December 23, 2009.  (Doc. 12-5 at 2)  The decision was not

27   _____

28          [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal
     Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the
     defendant in this action.

                                                      1

appealed (*see* Doc. 12-8 at 65), and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1405; *see also Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir. 1985).

On October 7, 2017, a second application was filed on behalf of J.W. (Doc. 12-8 at 65) The Social Security Administration denied the claim initially and upon reconsideration. (Doc. 12-5 at 7-10, 13-15) After requesting a hearing, Ms. Wall and J.W. appeared before an ALJ at a hearing held July 26, 2012. (*See* Doc. 12-3 at 41-42) The ALJ determined J.W. was not disabled as defined by the Social Security Act, and issued an order denying benefits on September 7, 2012. (Doc. 12-4 at 31)

The Appeals Council reviewed the decision and remanded it to an ALJ for further consideration on October 17, 2013. (Doc. 12-4 at 56-68) The Appeals Council directed the ALJ to obtain additional evidence regarding J.W.'s impairments, including evidence "from a pediatric and/or psychological medical expert;" evaluate medical source opinions "and explain the weight given to such opinion evidence;" further evaluate J.W.'s "subjective complaints, lay witness testimony, and third party statements;" and "give further consideration to the child's ability to function in an age appropriate manner for the entire period at issue." (*Id.* at 57-58)

On February 11, 2015, a new ALJ held a hearing at which J.W. and Ms. Wall testified. (*See* Doc. 12-3 at 73) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on September 25, 2015. (*Id.* at 11-32) Plaintiff again requested a review by the Appeals Council of Social Security, which declined to review the second ALJ's decision. (*Id.* at 2) Thus, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, a minor claimant must demonstrate he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential three-step process for evaluating a minor claimant's alleged disability. 20 C.F.R. § 416.924(e). The process requires the ALJ to determine whether the child (1) engaged in substantial gainful activity and (2) has a severe impairments or combination of impairments (3) that met or equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

The ALJ must evaluate how the child's limitations affect six broad areas of functioning called "domains" to determine whether a child's impairments functionally equal a Listing. *See* 20 C.F.R. § 416.926a. The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When "marked" limitations exist in two domains of functioning, or an "extreme" limitation exists in one domain, the minor claimant meets the Listing requirements. 20 C.F.R. § 416.926a(a).

///

3

## A.       Relevant Medical Opinions

Dr. Kimball Hawkins performed a psychological evaluation on November 23, 2009. (Doc. 12-18 at 15-18) J.W.'s mother accompanied him to the examination, and reported J.W. had "very late developmental milestones," including walking at two years old and speaking his first words at three years old. (*Id.* at 15) Dr. Hawkins observed that J.W. "sat silently and stared when asked questions," and "refused to answer questions or take a pencil to complete a task until his mother gave him permission." (*Id.* at 16) In addition, J.W. "stopped in the middle of timed tasks and did not continue until prompted." (*Id.*) Dr. Hawkins did not obtain scores on the Wechsler Intelligence Scale for Children ("WISC") test, because J.W. "refused to point to pictures upon request and did not respond when asked to identify pictures." (*Id.*) Further, Dr. Hawkins did not administer the "Wide Range of Assessment and Learning" test "due to [J.W.'s] nonresponsiveness and the hypothesis of malingering." (*Id.*) According to Dr. Hawkins, J.W.'s mother answered negatively to most questions related to J.W.'s communication, daily living, and socialization, reporting J.W. did not do things such as ask questions, use complex prepositions when speaking, assist in bathing himself, brush his teeth without assistance, understand the purpose of a clock, or participate in games with other children. (*Id.* at 17) Dr. Hawkins concluded J.W. "may have been malingering," but believed school records may "help determine whether or not he has a substantial handicap." (*Id.*)

On October 13, 2010, Dr. Federic Rowe evaluated J.W. at the Child Guidance Clinic, noting J.W. was seeing a case coordinator for group therapy. (Doc. 12-18 at 60) Dr. Rowe believed J.W. "probably ha[d] a learning disability though … [it had] not yet been diagnosed." (Doc. 12-18 at 60) Dr. Rowe observed,

> The patient does currently have most of the major symptoms of ADHD, which include: great difficulty concentrating and focusing, high level of distractibility, high level of impulsiveness in both speech and action and hyperactivity. He also tends to be restless and fidgety and has trouble staying in his seat. The patient also has some trouble settling down to get to sleep but sleeps through the night once he gets to sleep. His appetite is okay. There appear to be no other symptoms of a Mood Disorder.

(*Id.*) Dr. Rowe also noted J.W. had been "suspended from school 'several times'" and was "in the process of being tested for a learning disability." (*Id.* at 61) Dr. Rowe found J.W.'s speech was "[l]ogical, spontaneous and non-pressured." (*Id.*) In addition, he found J.W.'s thoughts did not reveal

"blocking, tangentiality, or flight of ideas." (*Id.*) Dr. Rowe opined J.W.'s memory was intact, and he was "alert and oriented times three." (*Id.* at 62) Dr. Rowe diagnosed J.W. with "Attention Deficit Hyperactivity Disorder, Combined Type," and prescribed Vyvanse. (*Id.*)

Dr. Hawkins performed a second consultative examination on February 11, 2011, which J.W. attended with his grandmother, Ms. Wall. (Doc. 12-18 at 71) Ms. Wall reported J.W. "walked at 18 months of ages and said his first words at 2 years of age." (*Id.*) She said J.W. took "Vyvanse for attention deficit hyperactivity disorder." (*Id.*) Ms. Wall told Dr. Hawkin's that J.W.'s "daily activities include[d] playing with toys, taking a nap, watching TV, playing video games, and taking out the trash." (*Id.* at 72) She also said he was able to "put clean clothes in his drawer..., feed, dress, and bathe himself." (*Id.*) Dr. Hawkins noted J.W. "did not appear to do his best" with the Mental Status Exam," because he "did not answer questions," "shrugged or did not give any response," and "engaged in noncompliant behaviors and smile[d] in a manipulative manner." (*Id.*) Dr. Hawkins believed J.W. "did some things for attention or to prove his disability, but then stopped after 15 minutes," and refused to write or state his name, count, or identify a color. (*Id.*) Dr. Hawkins abandoned an attempt to administer the WISC- IV because J.W. "refused to cooperate." (*Id.*) Based upon J.W.'s testing and the interview with Ms. Wall, Dr. Hawkins believed J.W. "may have learning deficits or borderline abilities." (*Id.* at 73) In addition, Dr. Hawkins opined J.W. was "in need of significant behavioral intervention." (*Id.*) Dr. Hawkins diagnosed J.W. as a malingerer and noted a conduct disorder needed to be ruled out. (*Id.* at 74)

On March 16, 2011, Dr. J. Frankel reviewed the record and opined there was insufficient evidence to find J.W. had a severe mental impairment "due to [his] non-compliance w/ ... testing."[2] (Doc. 12-18 at 84) Therefore, Dr. Frankel did not complete a domain evaluation for J.W. (*Id.* at 86)

In May 2011, Ms. Wall took J.W. to the Family Healthcare Network to establish care. (Doc. 12-19 at 42) Dr. Evelyn Manalang saw Plaintiff for the first time at Family Healthcare Network on March 12, 2012. (*Id.* at 3; *see also id.* at 7) Dr. Manalang noted J.W.'s mother reported that he "still ha[d] behavior problems at home and at school" and would "get[] aggressive towards anybody." (*Id.* at 7) However, his mother also said J.W.'s behavior was "curtailed when he started counselling (sic) at

---

[2] This finding was affirmed by Dr. Rubaum on July 27, 2011. (Doc. 12-18 at 93)

Mental Health – Porterville," which he attended every two weeks. (*Id.*) On March 28, Dr. Manalang completed a Medical Source Statement form. (*Id.* at 3-4) She noted J.W. had been diagnosed with ADHD, a learning disability, and conduct disorder. (*Id.* at 3) In addition, Dr. Manalang noted she was awaiting a psychiatric decision regarding J.W.'s "aggressive/ violent behaviors / conduct." (*Id.* at 4) Dr. Manalang opined J.W. had a marked limitation with "attending and completing tasks" and "interacting and relating with others." (*Id.* at 3) She also believed he had a moderate limitation with "acquiring and using information" and "caring for self." (*Id.* at 3-4) Dr. Manalang did not find any limitations with J.W.'s ability to move about and manipulate objects. (*Id.* at 4)

On March 15, 2015, Dr. Nancy Winfrey, a clinical psychologist, reviewed the record and responded to interrogatories from the ALJ upon remand. (Doc. 12-20 at 78-88) Dr. Winfrey opined J.W.'s limitations did not meet a listing. (*Id.* at 80) She noted J.W. had been diagnosed with ADHD and a learning disorder. (*Id.* at 83) Further, she believed the diagnosis of "Malingering" by Dr. Hawkins was "adequately supported for that evaluation." (*Id.*) According to Dr. Winfrey, J.W. had a "less than marked" limitation with his cognitive and communicative abilities, explaining "[t]he marked … scores which reflect the caregivers' views of various developmental areas, are discrepant with the rest of the record and do not seem valid." (*Id.*) Further, she observed that when J.W.'s first year in second grade, prior to his retention, "he was in 4 different schools," and he showed "significant improvement over time." (*Id.*) Dr. Winfrey opined also that J.W.'s social abilities were "less than marked." (*Id.* at 84) She noted:

> If I were evaluating the claimant's behavior based on school discipline, I would rate it marked (e.g., 31E). He has had significant discipline issues since kindergarten, including multiple suspensions (31E, 30E, 23E, and 11E). There have always been behavioral goals in his IEP. However, most of these instances seem like impulsive behavior sometimes resulting in mild aggression, not premeditated or rageful behavior. He is said to be "rough" (22F, p. 18; 11F) and has been physically and verbally aggressive with peers at school.
>
> Elsewhere in the record, the claimant is noted to be "well-mannered… polite, respectful[")]; "loving and caring," as noted by his caregiver (23F); has several friends (22F); has had no legal consequences to his actions; and seems better with medication (19F).

(Doc. 12-20 at 84) Further, Dr. Winfrey opined J.W.'s ability to concentrate and maintain persistence/ pace were "marked without medication; less than marked with medication." (*Id.*) She explained

J.W.'s ADHD symptoms were "well documented," including difficulty with concentration," and J.W. required "several trials of different types and doses" of medication. (*Id.*) She concluded J.W.'s "sense of safety and consistency with self-care do not seem impaired." (*Id.*)

**B.    The ALJ's Findings**

Pursuant to the three-step process, the ALJ found J.W. had not engaged in substantial gainful activity since the application date. (Doc. 12-3 at 14)  Next, the ALJ determined J.W. had the following severe impairments: "ADHD, learning disorder, and conduct disorder."  *Id.*

Examining the six functional domains set forth in 20 C.F.R. § 416.926, the ALJ determined J.W. had a "less than marked limitation" in the following domains:  acquiring and using information, attending and completing tasks, and interacting and relating with others. (Doc. 15-3 at 23, 25, 27)  The ALJ found J.W. had "no limitation" in moving about and manipulating objects, in the ability to care for himself, and in health and physical well-being. (*Id.* at 29-30, 32)  Because J.W. did not have an impairment that resulted in "marked" limitations in two domains or "extreme" limitation in one domain, the ALJ concluded J.W. was not disabled as defined by the Social Security Act. (*Id.* at 32)

<u>**DISCUSSION AND ANALYSIS**</u>

Appealing the decision of the ALJ, Ms. Wall asserts the ALJ erred in giving "limited weight" to the opinion of Dr. Manalang regarding J.W.'s limitations. (Doc. 22 at 18-20)  On the other hand, the Commissioner contends that the ALJ's decision "is supported by substantial evidence and free from material error." (Doc. 24 at 17)

**A.    ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Because Dr. Manalang's opinion that J.W. had "marked" limitations conflicted with the opinion of Dr. Winfrey that J.W.'s limitations were "less than marked," the ALJ was required to identify "specific and legitimate" reasons for rejecting the limitations identified by Dr. Mangalang.

The ALJ summarized the conclusions of Dr. Manalang and the weight given to the opinion as follows:

> Dr. Manalang opined that the claimant had moderate limitations in acquiring and using information and carrying for himself, marked limitations in attending and completing tasks, interacting and relating with others, and no limitations in moving about and manipulating objects or in health and physical well-being (Exhibit 19F/2-3). I give limited weight to Dr. Manalang because I note that at the time of making this opinion, she had only seen the claimant once.

(Doc. 12-3 at 22) Plaintiff contends with this explanation, the ALJ failed to properly evaluate the medical opinion. (Doc. 22 at 18)

As Plaintiff observes, "Dr. Manalang was a physician at the same medical practice that J.I.W. had been treated for nearly a year," and "not only examined J.I.W., but also had the benefit of a recent medical record and progress notes from her physician colleagues." (Doc. 22 at 19) Significantly, the Ninth Circuit has indicated that a physician who treats a patient only once may be considered a treating source when the physician's opinion represents both personal knowledge of a patient's condition and information communicated by other members of treating team. *See Benton v. Barnhart*, 331 F.3d 1030,

1039 (9th Cir. 2003). Because Dr. Manalang examined J.W. and was aware of his diagnosis history (Doc. 19-19 at 7), she is considered a treating physician.

Even if the Court were to find Dr. Manalang was an examining physician, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, such as Dr. Winfrey. *Pitzer*, 908 F.2d at 506. The Ninth Circuit determined that though "'limited observation' of [a] claimant would be a reason to give less weight to an [examining physician's] opinion ... than to the opinion of a treating physician, it is not reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester*, 81 F.3d at 821. However, here, the ALJ gave "limited weight" to the opinion of Dr. Manalang solely because she examined J.W. once, while giving "great weight" to the opinion of Dr. Winfrey, who never examined J.W. (*See* Doc. 12-3 at 22) The ALJ erred.

**B.    Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by Dr. Manalang.[3] Moreover, the ALJ failed to address the conflicting opinions of Drs. Manalang and

---

[3] The Commissioner purports to identify additional reasons supporting the rejection of Dr. Manalang's opinion, asserting "it lacked objective support and was inconsistent with the record as a whole." (Doc. 24 at 13, emphasis omitted)

Winfrey concerning J.W.'s abilities with "attending and completing tasks" and "interacting and relating with others." An ALJ has the burden to "set[] out *a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added). The ALJ failed to meet this burden.

The Court cannot conclude the ALJ's errors were harmless, because a finding that J.W. had marked limitations in the domains identified by Dr. Manalang would mandate a finding that J.W. is disabled. *See* 20 C.F.R. § 416.926a(a). Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate based upon the review of the medical evidence, the Court declines to address the remaining issues raised by Plaintiff in the opening brief.

Based upon the foregoing, the Court **ORDERS**:

1.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.      The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Vivian Wall, on behalf of minor J.W., and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated: __ **March 2, 2018** __                  _____ **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE

---

However, the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking"). Because the ALJ identified only one reason for giving limited weight to the opinion of Dr. Manalang—namely, her single examination of J.W.—the Court is unable to consider the additional reasons identified by the Commissioner.